**SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**LILLY WHITE CHURCH a/k/a Vance Chapel Missionary Baptist Church et al., Appellees.**

No. 16189.

Court of Civil Appeals of Texas, (1st Dist.).

Dec. 27, 1973.

Rehearing Denied Jan. 24, 1974.

Knipp & Sedgeley, James S. Kelly, Houston, for appellant.

Tillman, Pribilski & Hunt, James R. Hunt, Houston, for appellees.

COLEMAN, Chief Justice.

This is a trespass to try title suit brought by Ella Freeman and T. J. Adams on behalf of the Lilly White Church and the membership thereof against the Spring Branch Independent School District. It was stipulated that the church had record title to the land and that the only issue to be tried was whether the School District had peaceable, continuous and adverse possession of the property in question for more than ten years prior to the institution of the suit. Issues presenting this defense were submitted to a jury, and the trial court entered a judgment for the church based on the jury verdict.

Appellant alleges that the trial court erred in refusing to sustain a plea in abatement challenging the authority of the named plaintiffs to maintain the suit on behalf of the church; in excluding certain

622

testimony; and in submitting a special issue inquiring whether the church knew that the School District was claiming adverse possession of the land.

■ Appellant's plea in abatement was heard prior to the trial on the merits. The court's order overruling the plea recited that it heard evidence. The statement of facts does not contain the evidence heard on the plea. Appellant has brought to this court certain depositions containing admissions which they contend conclusively establish the validity of the plea. There is nothing in the record to show that these depositions were introduced into evidence at the hearing. These depositions were not made part of the transcript or of the statement of facts, and could not properly have been included therein. Bell v. Umstattd, 401 S.W.2d 306 (Tex.Civ.App.—Austin 1966, error dism'd); McFadden v. McFadden, 213 S.W.2d 71 (Tex.Civ.App.—1948); Pelton v. Cooke, 209 S.W.2d 398 (Tex.Civ.App.—1948, writ ref., n.r.e.).

■■ Depositions on file in the clerk's office are not "original papers or exhibits" which the trial court is authorized by Rule 379, Texas Rules of Civil Procedure, to order sent to the appellate court in lieu of copies. This court is not authorized to consider the depositions so presented to this court. Food Machinery Corporation v. Moon, 165 S.W.2d 773 (Tex.Civ.App.—1942).

■ In the absence of a statement of facts containing the evidence on which the court acted, we cannot say that the court erred in entering the order overruling the plea in abatement.

■ The trial court refused to permit appellant to interrogate appellees as to the purposes to which they would put the property should they prevail in the lawsuit. This testimony was not material to any issue in the case. Appellant says that the testimony was desired for impeachment purposes and to show motives, bias, and prejudice of the witnesses. Appellant

failed to preserve the answers expected of the witnesses in a bill of exception. Reversible error is not presented. Thompson v. State, 311 S.W.2d 927 (Tex.Civ.App.—1958, writ ref., n.r.e.); Sims v. Duncan, 195 S.W.2d 156 (Tex.Civ.App.—1946, writ ref., n.r.e.).

Special Issue No. 2 reads as follows:

"Do you find from a preponderance of the evidence that the Lilly White Church (also known as Vance Chapel Missionary Baptist Church) knew that the Spring Branch Independent School District was claiming adverse possession of the land in controversy?"

Appellant objected to this issue for the reason that it placed an "undue burden" on the defendant to prove that the plaintiff had certain knowledge "which in no manner can be proven or is in any manner required to be proven under the ten year statute of adverse possession." They also objected that the issue was duplicitous in that it required defendants to prove adverse possession twice in that the issue inquired about an element of adverse possession submitted in Special Issue No. 1 and should have been covered by an instruction. They also contended that by submitting the issue the trial court was commenting on the weight of the evidence.

It was stipulated that the church had record title to the property in question. A church building was constructed on the property and intermittently was used for church services until 1964. There was testimony that the school was held in the church building during the period 1914–1917, before a school building was erected. Sometime prior to 1936 a school building was erected on the property, a distance of five feet or a little more from the church. There was testimony that the church used the school yard for parking and used a well on the area claimed by the school as a source of water. The evidence is disputed as to whether a fence divided the school from the church. The school was refinished and repainted in 1941. The school was maintained and used up to 1961. The

school was renovated in 1952. There was testimony that one acre of the property on which the school was located was fenced prior to 1941. There are no written resolutions or minutes or any other recorded documents reflecting a claim of ownership to the property on part of the School District. There has been no oral communication between the School District and the church with regard to the ownership of the property. Members of the school board understood that the school owned the property. There are graves on the property including that part claimed by the school. There was testimony that the church allowed the School District to use the property. The church sold the City a right of way to widen a street in the "mid fifties". The School District made no protest of this action.

There was testimony that in 1941 the school site was fenced off from the church. There was also testimony that there was no fence between the school and the church. One of the school trustees testified that the District fenced the school in 1961 or 1962. This suit was filed in 1970. A surveyor testified that in 1971 there was an old fence across the rear of the property, a new fence in the front of the property, and a new fence between the church and the school tracts. Nancy Stewart taught at the school from 1914–1917 and from 1936–1961. She testified that there was no fence separating the school from the church. The church members took care of the school building. She never heard anyone say that the school owned the land. Church services were held in the school at one time before 1936 when the church was being repaired. She was not a member of the church. She later remembered that a barbed wire fence divided the school from the church. There was never a fence in the front. The church put up one or two lines of barbed wire to keep the school children away from the church. The first school was a county school. Then the Spring Branch Common School District operated it until about 1941. After 1941 she was paid by the Spring Branch Independent School District.

■ There was no evidence that the entry of the School District onto the property was other than permissive. The erection of the school building near the churchhouse and the joint use of the property harmoniously for many years can lead to no other conclusion. The School District entered upon the land in recognition of the title of the church. It was necessary that the School District establish a repudiation of this relationship, and a claim of title by the School District adverse to the title of the church. The repudiation and adverse claim must have been clearly brought home to the church. Limitation did not begin to run prior to the date that such repudiation and adverse claim were brought home to the church. Davis v. Lund, 41 S.W.2d 57 (Tex.Comm.App. 1931) ; Doherty v. Jensen, 174 S.W.2d 77 (Tex.Civ.App.—Galveston 1943, modified, 143 Tex. 64, 183 S.W.2d 453.)

The original entry on the land for the purpose of conducting a school was permissive. The subsequent construction of the schoolhouse, the fencing of the school grounds and the renovation and repair of the building would not be such actions as would constitute a repudiation of the tenancy relationship. We find no evidence of action on the part of the School District such as would bring home to the church notice that the tenancy relationship had been repudiated.

In Rick v. Grubbs, 147 Tex. 267, 214 S. W.2d 925 (1948), the court said:

"  .  .  . the possession must be of such character as to indicate *unmistakably* an assertion of a claim of *exclusive* ownership in the occupant. It follows that the law's requisites are not satisfied if the occupancy is shared with the owner or his agents or tenants.  .  . "

■ The question of fencing was vital in this case if it be assumed that the School District had repudiated the tenancy under which its predecessors had originally entered on the property, and had brought home notice of the repudiation to the church. Since it is undisputed that the

record owner was in possession of a part of the tract, the School District as an adverse claimant was clearly restricted to the land actually enclosed and occupied by it. Rick v. Grubbs, supra. The burden was on appellant to plead and prove the description of the land within its enclosures. Furlow v. Kirby Lumber Co., 53 S.W.2d 642 (Tex.Civ.App.—Beaumont 1932). Appellant adopted the description of the land in controversy as alleged in the petition filed by the church. The church produced a surveyor who testified as to the metes and bounds of the land enclosed by fence in 1971. He testified that on two sides the fence was new. The School District had the burden of showing that this particular land had been enclosed by fence for the applicable limitation period. Houston Oil Co. of Texas v. Holland, 222 S.W. 546 (Tex.Comm.App.1920).

 Special Issue No. 1 reads:

"Do you find from a preponderance of the evidence that the Spring Branch Independent School District had exclusive, peaceable and adverse possession of the land in controversy, using or enjoying the same for any continuous period of ten (10) years before April 25, 1968?"

In connection with this issue the court defined "peaceable possession," "adverse possession," "claim of right," "hostile," and "use and enjoyment." Special Issue No. 2 was predicated on an affirmative answer to this issue. The jury answered it in the negative, and did not answer Special Issue No. 2. There were no objections to Special Issue No. 1. No issues or explanatory instructions were requested.

"Under Rules 273, 274, 276, and the first paragraph of Rule 279, a request for submission is the method of preserving the right to complain of omission of, or failure to submit an issue which is relied on by the complaining party. Objection, however, is the proper method of preserving complaint as to (1) an issue actually submitted, but claimed to be defective; (2) failure to submit, where the ground of recovery or defense is re-

lied on by the opposing party." Lyles v. Texas Employers' Insurance Association, 405 S.W.2d 725 (Tex.Civ.App.—Waco 1966, writ ref., n.r.e.).

Appellant properly objected to Special Issue No. 2 in that it failed to include the element of constructive notice in addition to the element of actual knowledge. The issue was not answered because it was submitted conditionally. The error does not require reversal of the case. The issue was immaterial since the jury rejected the plea of adverse possession by their answer to Special Issue No. 1. The error was harmless under Rule 434, T.R.C.P. Edelstein v. Lehmann, 452 S.W.2d 49 (Tex. Civ.App.—San Antonio 1970, writ ref., n. r.e.).

 The failure to establish the fact of an enclosure of the described land for an applicable limitation period required the trial court to enter a judgment for the appellees.

The judgment is affirmed.